LIPMAN POULTRY COMPANY
*vs.*
ERNEST H. JOHNSON, STATE TAX ASSESSOR
RIVERSIDE POULTRY FARMS
*vs.*
ERNEST H. JOHNSON, STATE TAX ASSESSOR
COLDBROOK FARMS
*vs.*
ERNEST H. JOHNSON, STATE TAX ASSESSOR

Kennebec.   Opinion, February 6, 1958.

*Brann & Isaacson,* for plaintiffs.
*Ralph Farris,* for defendant.

Sitting: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ.

TAPLEY, J. On exceptions. These cases by stipulation are to be considered together as the facts and circumstances pertaining to Lipman Poultry Company are applicable to the other appellants. An appeal was taken to the Superior Court under provisions of Sec. 33, Chap. 17, R. S. 1954 from a decision of the State Tax Assessor on the sales and use taxability of certain products purchased by the appellant for use in its poultry business. The appeal was heard and determined by a single justice of the Superior Court. Both the appellant and appellee took exceptions to the findings of the single justice.

The appellant, Lipman Poultry Company, contends in its exceptions that the justice below was in error when he found that the hormone preparation (capette pellets) and the sawdust used for litter were subject to the sales and use tax while, on the other hand, the appellee, Ernest H. Johnson, State Tax Assessor, complains that the justice was in error in classifying antibiotics as poultry feed. The appellee further complains in his bill of exceptions that the justice below "failed to enter such order and decree as the nature of the case required so that the parties to this case could determine whether the assessment was proper and the appellee further states he failed to order the appellants to pay the tax due or for the appellee to abate the tax which he considered not due." This portion of appellee's exceptions was not argued orally nor in his brief so it will be regarded as waived. *Poirier* v. *Venus Shoe Manufacturing Co.*, 136 Me. 100.

The parties by stipulation have confined the issue to the determination of the taxable status of the following items:

"1. Antibiotics (terramycin oil suspension referred to in the trade as 'TOS'; terramycin animal formula,—'TAF' and terramycin poultry formula, 'TPF') ;

    2.   A hormone preparation called 'capette' pills; and

    3.   Litter (in this case, sawdust)."

Appellant contends that the items in issue are exempt from taxation because they come within the purview of Chap. 17, Sec. 10, Subsec. VII, R. S. 1954 "Sales of seed, feed and fertilizer used in agricultural production - - -."

The record of the case discloses the justice below had for evidence upon which to base his findings two exhibits and the testimony of Frank J. Lipman, an officer of the appellant corporation, and Milton L. Scott, a qualified expert in the field of animal and poultry nutrition. The appellee submitted no evidence.

The issue has been narrowed by agreement so that it becomes a matter of definition as to whether antibiotics and hormone preparations are feeds and sawdust used for litter is fertilizer within the classification of use in the poultry business as considered by the legislators at the time of the enactment of Chap. 17, Sec. 10, Subsec. VII, R. S. 1954.

The antibiotics and the hormone preparation are used in the raising of poultry and the purpose of their use is to shorten the period of growth of the birds and to increase their weight. The antibiotics are used primarily as a "chick starter." The antibiotics are in a powder form and sometimes mixed in the feed so that they become an integral part of the mixture while at other times they are mixed with the water and introduced into the body in that manner. The hormone preparation (capette pellets) are injected under the skin of the bird. There appears to be no question that the introduction of these two elements into the system results in a faster increase of weight than would occur when reliance is had on the use of feed not containing these ingredients. Professor Scott stated that the use of anti-

biotics causes an increase in the weight and growth of the birds but was unable to state the reason why the increase takes place. He speaks of a number of different theories propounded, none of which have ever been established as proven. It actually sums up to the effect that the use of antibiotics in the production of poultry causes an increase of weight and growth but the reason for it is not known.

The case was heard by a single justice without intervention of a jury and in order to overrule his findings of fact, it must be shown that they are not supported by credible evidence. It is only when he finds facts without evidence or contrary to the only conclusion which may be drawn from the evidence is there any error of law. *Sanfacon* v. *Gagnon, et al.*, 132 Me. 111. *Weeks* v. *Hickey, et al.*, 129 Me. 339.

If the record of the evidence supports the findings of the justice below, then the exceptions will be overruled, otherwise they will be sustained.

We are here concerned with an industry that has had rapid growth in recent years and there has been demonstrated a marked departure in the method of feeding poultry for the purpose of sale. It is the obvious purpose of the industry to raise the birds to that point of growth and weight which will cause them to be marketable in the shortest period of time. In order to accomplish this purpose, new methods have been employed which require the introduction of antibiotics and hormones into the system of the bird. The justice below in his findings characterized antibiotics as feed and the hormone preparation (capette pellets) as not being within that category.

Professor Scott has a substantial knowledge of poultry nutrition gained through study and experimental research and since 1949 he has been working with antibiotics as to

their influence in poultry nutrition. Professor Scott explains that "nutrition" is the process of assimilating food, while "nutrient" is "One: 'nourishing; affording nutriment.' And Two: 'A drug which affects the nutritive or metabolic processes of the body.'" He further says that nutrition does not only deal with food material but also with the process of assimilating the food. He contends that the antibiotic is a nutrient affecting the nutritive or metabolic processes of the body which in some unknown way increases body tissues and improves the diet, causing an increased growth. It acts "'in improving the efficiency with which food is converted to an increase in body weight in growing animals.'"

Professor Scott in speaking of the relationship of antibiotics to nutrition quoted a statement of which he approved from a book written by Dr. Jukes, an authority in the field of antibiotics as related to nutrition. This quoted statement is in the following language:

> "'There is a large amount of experimental evidence that establishes an effect of antibiotics in improving the efficiency with which food is converted to an increase in body weight in growing animals.'"

Dr. Jukes believes that an antibiotic is in the nature of an agent when used with food, causing in some manner a chemical reaction with the end result of converting the food more efficiently to increase the body weight in growing poultry.

Concerning the use of hormones (capette pellets), Dr. Scott testified that this drug affects the metabolic process of the body causing increased growth of all tissues more especially those of a fatty nature. It is administered by injection under the skin as it is poorly absorbed in the intestinal tract if taken through the medium of the stomach.

Professor Scott places these hormones in the field of nutrients and in speaking of vitamins, which he calls nutrients, he says:

> "They do not form a permanent part of the body tissue. They are used as catalysts in the body to help other reactions take place; that is, the reactions between the various minerals and protein constituents which do make up the body frame and tissue and then after they serve their usefulness they are excreted and must be replaced with a further supply."

A careful analysis of the testimony of Professor Scott brings us to the conclusion that antibiotics and hormones are in their nature catalysts and function not as food but as an assist to its assimilation. According to the description of these drugs and their uses, it is reasonable to say that by their use alone they would not supply sufficient nourishment while, on the other hand, when these ingredients are administered in conjunction with poultry feed, the result is an accelerated growth of the birds.

There seems to be no place in the definition of feed as used in the statute for the inclusion of antibiotics and hormones.

The findings below determined that litter (in this case, sawdust) was not fertilizer and, therefore, is subject to the sales and use tax. The sawdust is used for litter and bedding in the chicken houses. During its use it becomes intermingled with the excretions of the chickens and when it is removed it is used by farmers to fertilize the land. The appellant takes the position that as the sawdust, in combination with the poultry manure, is used as fertilizer, it should be classed as such. This sawdust was bought and used for the prime purpose of litter and bedding as a necessary part of the process of raising poultry. It was not purchased to be used as fertilizer.

The finding, that sawdust as used in this case was not fertilizer, is correct.

It is to be noted that since the inception and trial of this case, Secs. 10 of Chap. 17, Subsec. VII, R. S. 1954 has been amended by Sec. 4, Chap. 402, P. L. of 1957, to include hormones, litter, and medicines used in agricultural production as exemptions to the sales tax. We are not, however, concerned with this amendment in arriving at our decision in this case.

*Appellant's exceptions to the ruling that the hormone preparation is not feed are overruled.*

*Appellant's exceptions to the ruling that litter (sawdust) is not fertilizer are overruled.*

*Appellee's exceptions to the ruling that antibiotics are poultry feed are sustained.*

*Case remanded to the Superior Court for decree in accordance with this opinion.*